## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **DOUGLAS E. HARDY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12CV00012 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By:  James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,**[1] | ) | |
| | ) | |
| Defendant. | ) | |

*Michael F. Gibson, Princeton, West Virginia, for Plaintiff; Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Douglas E. Hardy filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying a portion of his claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 1381-83f (West 2012). Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

Hardy protectively applied for SSI on March 28, 2008, alleging that he became disabled on March 15, 2008 due to a back injury. The agency initially denied Hardy's claim on May 1, 2008 and again on reconsideration on September 24, 2008. The plaintiff requested a hearing before an administrative law judge ("ALJ"), which was originally held on June 18, 2010. At that hearing, Hardy indicated that the record was not complete, causing the ALJ to postpone the hearing to give Hardy time to acquire and submit the necessary documents to complete the record and to hire an attorney. A second hearing was held before the ALJ on February 14, 2011, at which Hardy, now represented by counsel, and a vocational expert ("VE") testified.

On February 25, 2011, the ALJ issued a decision finding that prior to January 25, 2011, the plaintiff had sufficient residual functional capacity ("RFC") to perform a modified range of light work and thus was not disabled under the Act. The ALJ further found that beginning on January 25, 2011, the plaintiff now qualified as an individual of advanced age, 20 C.F.R. § 416.963 (2012), and had such limited RFC that he was disabled for purposes of the Act. Hardy requested review by the Social Security Administration's Appeals Council of the ALJ's conclusion that he was not disabled prior to January 25, 2011. The Appeals Council denied his request for review, thereby making the ALJ's decision the final

decision of the Commissioner.  Hardy then filed a Complaint in this court seeking judicial review of the Commissioner's decision.

## II

Hardy was 51 years old when he filed his application, making him a person closely approaching advanced age under the regulations.  *See* 20 C.F.R. § 416.963(d).  Hardy subsequently became a person of advanced age during the pendency of this case.  *Id*.  He has a high school diploma and completed several years of college and vocational training, specifically in welding.  (R. at 220.)  As a young man, he received certifications in home repair and auto body work.  (R. at 279, 281.)  He attended Southwest Virginia Community College as recently as 2005, participating in a work-study program.  (R. at 215.)

The plaintiff's employment history is lengthy, but he has held few long-term positions.  At the time he filed for benefits, he was earning $50 per week as a caregiver for an elderly neighbor, cooking her meals and doing other odd jobs.  (R. at 34.)  He stopped this work when he hurt his back.  (R. at 38.)  Hardy has also worked in the work study program at his college, and as a welder, construction foreman, dishwasher, painter, surveyor for the United States Census, certified flagger for highway construction, and in two positions for coal companies.  (R. at 215.)  Hardy has also apparently worked "under-the-table" painting cars.  (R. at

56.)  Other than his work study and his employment by a coal company in the early 1990s, Hardy stayed in all of these positions for less than a year, with several enduring only a few weeks.

Hardy claims disability resulting from chronic pain and degenerative disc disease in his lower back, as well as chronic pain in his right shoulder.  Hardy now appeals the Commissioner's denial of his request for benefits from March 15, 2008, the onset date of his alleged disability, to January 25, 2011, which the ALJ recognized as the date he became of person of advanced age.  This recitation of the facts, therefore, will focus only on that time period.

Hardy asserts that he became disabled when he hurt his back while moving blocks of firewood in his home.  (R. at 38-39.)  He described his pain as aching, stabbing, burning, and throbbing in his lower back, right hip, down his left leg and also in his right shoulder.  (R. at 244.)  On March 31, 2008, Hardy visited Omobola Oduntan, M.D., complaining of severe back pain, rating his pain as a ten on a scale of one to ten.  (R. at 355.)  Dr. Oduntan observed that Hardy appeared to be in no acute distress, but he did have mild left perilumbar tenderness and decreased sensation in his left leg.  (R. at 291.)  Dr. Oduntan ordered an MRI, which showed that Hardy was developing degenerative disc disease in his lower back and that there was "evidence of asymmetric bulging of the disc annulus at the L4-5 level." (R. at 241.)  Dr. Oduntan then wrote a note on a prescription pad for Hardy stating

that he was "unable to work at this time." (R. at 243.) Dr. Oduntan referred Hardy to see a neurosurgeon, but he declined the referral after Medicaid did not approve him for coverage. (R. at 351, 353.)

Hardy did not return to see Dr. Oduntan for six months. On October 31, 2008, Hardy requested that Dr. Oduntan sign another note opining that he was disabled, as well as renew her referral to the neurosurgeon. Although she agreed to refer him again, Dr. Oduntan refused to write a note for Hardy after he told her he reaggravated his back while working as a painter in Maryland the previous week. (R. at 352.) Hardy testified before the ALJ that he had taken the job because he needed money, but that the work had caused him so much pain he could not sleep for two days, forcing him to quit and return home. (R. at 40.) Dr. Oduntan noted that he declined any prescription medication during that appointment. *Id.*

The plaintiff had a consultation in December 2008 with Dr. John Jane, a neurosurgeon at the University of Virginia. Dr. Jane noted that Hardy "had a pretty sudden onset of lower back and bilateral legal pain," during the appointment but that he was "really not at all convinced about [Hardy's] history." (R. at 321.) Hardy followed up a few days later with Dr. Oduntan, indicating that his back pain had improved to a three on a scale of ten. (R. at 349.) Dr. Jane ultimately did recommend Hardy undergo a surgical procedure, a left sided L4-5 laminectomy and disectomy. The surgery was performed on January 20, 2009, and attending

personnel noted it went "very well."  Hardy was discharged from the hospital the following day.  (R. at 311-12.)

Hardy testified that the surgery was effective in relieving some of his pain, but it did not help with the tingling and burning in his legs.  (R. at 43-44.)  A few months after the surgery, he was participating in physical therapy and believed his pain to be improving, rating it as a four or five on a scale of ten.  (R. at 339, 343.)  Hardy also began taking Lortab, a prescription narcotic pain reliever.  In April 2009, Dr. Oduntan suggested that Hardy schedule another follow-up appointment at the University of Virginia for pain management, but Hardy did not pursue this option.   (R. at 344.)   In October 2009, Hardy returned to see Dr. Oduntan, complaining chiefly of an upper-respiratory infection. He also complained that his pain had returned to an eight on a scale of ten, and Dr. Oduntan wrote a note indicating that he was "unable to work at this time."  (R. at 328.)

The plaintiff also alleged chronic pain in his right shoulder.  On June 30, 2009, Hardy visited Dr. Oduntan with complaints about shoulder pain, which he stated had arisen after mowing the lawn for three hours the previous day.  (R. at 337.)   Dr. Oduntan observed that his shoulder was making "popping sounds," which elicited mild pain.  *Id.*  Hardy's shoulder was x-rayed on July 7, 2009, but no fracture or dislocation was visible.  (R. at 357.)

The plaintiff followed up on his shoulder condition with Linda Staiger, M.D. on August 25, 2009. (R. at 322.) Hardy told Dr. Staiger that his shoulder pain had been a constant four out of ten since he injured it in 2002. Dr. Staiger observed no tenderness, no weakness and no limitation on Hardy's range of motion, but did note crepitus with abduction in the shoulder. An X ray revealed the prominence of an enlargement of a bony contour on the underside of the right clavical, suggesting a prior ligament problem. (R. at 322.) Dr. Staiger believed Hardy was likely to have AC joint degeneration and was unlikely to have a rotator cuff issue. *Id.*

Dr. Oduntan evaluated the plaintiff's shoulder once more in December 2009, noting little change in his status. Dr. Oduntan, as she had on prior occasions, suggested that Hardy follow up with an orthopedist regarding his shoulder, but the plaintiff did not do so. (R. at 380.)

The plaintiff did not see a physician between December 2009 and June 14, 2010, when he began treatment with Kerry Moore, M.D., as Dr. Oduntan had left the practice. Dr. Moore prescribed several types of pain medication — both narcotic and non-narcotic — to the plaintiff, and issued him a note stating his opinion that the plaintiff was disabled. (R. at 330, 382.) Dr. Moore's records and notes contain little explanation of how he reached this conclusion. Hardy saw Dr. Moore again in September and November, evidently exhibiting little change in his condition and rating his pain as four or six on a scale of ten. (R. at 384, 386.)

Two state physicians also evaluated the plaintiff's medical records. On April 29, 2008, Donald Williams, M.D., concluded that Hardy had a medically determinable impairment of a disorder of the back. (R. at 300.) Dr. Williams considered Dr. Oduntan's opinion, but concluded that Hardy would likely make a satisfactory recovery within 12 months and therefore was not disabled. *Id.* With regard to the plaintiff's RFC, Dr. Williams opined that he was able to frequently lift ten pounds and occasionally lift twenty pounds. He also stated that the plaintiff was able to sit, stand or walk six hours in an eight hour work day. (R. at 296.) Dr. Williams believed the plaintiff's ability to push or pull would be unlimited. *Id.* Finally, he noted that Hardy would only be able to occasionally climb or stoop, but that he could frequently balance, kneel, crouch and crawl. (R. at 297.)

Shirish Shahane, M.D., reviewed Hardy's case again on September 15, 2008, and concurred in each of Dr. Williams' conclusions, including the plaintiff's RFC. Dr. Shahane noted that on reconsideration the plaintiff had reported no worsening symptoms and had made no new allegations regarding his condition.

In testifying before the ALJ, Hardy described significant limitations his chronic pain imposed on his daily activities. (R. at 248.) Household chores, preparing meals, dressing, and bathing were difficult because it was painful for him to bend, forcing him to use a walker or cane. (R. at 248-54.) He testified that he was in pain "all day long" and that it was caused by walking, sitting or lying

down.  (R. at 44.)  Hardy stated that he was in "severe" pain while he was testifying before the ALJ.  (R. at 48.)  The pain forced him to move around every fifteen minutes, and on especially active days, his pain was so severe he would be unable to sleep for two or three days afterward.  (R. at 45, 47.)

Hardy, however, also provided testimony suggesting that his impairment was less severe than these statements might imply.  He testified that he mowed his own lawn, as well as that of two neighbors.  (R. at 41.)  Hardy lived alone and was able to carry firewood and generally maintain his home.  (R. at 45.)  He testified that he was able to lift ten pounds in going about his daily routine.  (R. at 36.)  He often walked the mile distance from his home to the post office to collect his mail and visit neighbors.  (R. at 52.)  Since the alleged onset of his disability, Hardy was also briefly employed in a temporary job in Ohio, as a painter in Maryland, and as a caregiver for his neighbor's home.  (R. at 34, 35, 40.)

At the hearing, the VE opined that Hardy would be able to perform a range of employment for a person of his age, experience, skill and physical limitations. Hardy could work as a flagger, and at least 5,000 positions of that kind exist in the Mid-Atlantic region, and 68,000 positions nationally.  The VE further opined that the plaintiff could be employed as an usher, and at least 5,000 positions of that kind exist in the Mid-Atlantic region, and at least 74,000 positions nationally.  The plaintiff could work as a counter clerk in one of the 6,500 positions in the Mid-

Atlantic region or 60,000 positions nationally.  Finally, the VE stated that the plaintiff could work in a shipping/receiving position, of which there are 3,900 in the Mid-Atlantic region and 25,000 nationally.  (R. at 60-61.)

The ALJ found that Hardy suffered from the severe impairments of lumbar spinal disc disease with mild ridiculitis, as well as right rotator cuff syndrome, both of which caused him more than minimal functional limitations.  Despite this finding, the ALJ questioned the credibility of Hardy's testimony regarding the severity of his impairment, specifically emphasizing his activities of daily living, including mowing grass and walking significant distances, and evidence of his working after the alleged onset of disability.  The ALJ also questioned the plaintiff's history of treatment, pointing to two six-month periods of no treatment by physicians as proof that Hardy's impairments were not as severe as he stated. Finally, the ALJ questioned the plaintiff's allegations of severe and constant pain, stating that the record presented no medical evidence that would explain the severity or duration of the pain such as to prevent him from working on a sustained basis.  (R. at 21-22.)  Thus, the ALJ concluded that Hardy had the RFC to perform light work with some limitations.  The ALJ specifically limited that work to:

> The ability to lift and carry 20 pounds frequently and 10 pounds occasionally[2], stand/walk for 6 hours in an 8-hour period, and sit for 2

---

[2] The ALJ appears to have inverted these numbers.  Drs. Williams and Shahane stated that the plaintiff would be able to frequently lift 10 pounds and occasionally lift 20 pounds.  I will assume that the ALJ intended to agree with their assessment.

hours in an 8-hour period; no overhead reaching with the dominant right upper extremity; and no more than occasional handling and fingering with the right hand.

(R. at 20.)  Based on this RFC assessment and the VE's testimony, the ALJ held that between March 15, 2008, and January 25, 2011, Hardy was capable of performing jobs that existed in significant numbers in the national economy and therefore was not disabled as defined by the Act.

Hardy contests the ALJ's decision, arguing that the ALJ selectively asserted portions of the record, thereby failing to consider the totality of the evidence, both with regard to the substance of the RFC determination as well as in evaluating the plaintiff's credibility.  The Commissioner contends that the ALJ fully considered the evidence of record in correctly finding that Hardy was not disabled under the Act during the relevant time period.

III

The plaintiff bears the burden of proving that he was under a disability during the relevant time period.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  The standard for disability it strict.  The plaintiff must show that his "physical or mental impairment or impairments [were] of such severity that he [was] not only unable to do his previous work but [could not], considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ….” 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process.  The Commissioner considers whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or equaled the severity of a listed impairment; (4) could have returned to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant was not disabled, the inquiry immediately ceases. *Id*.; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).  The fourth and fifth steps of the inquiry require an assessment of the claimant’s RFC, which is then compared with the physical and mental demands of the claimant’s past relevant work and of other work present in the national economy. *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner’s findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weignberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Contrary to the plaintiff's assertions, the ALJ did consider the totality of the evidence in the record in concluding that Hardy had the RFC to perform light work. The ALJ discussed each of the plaintiff's doctor visits in his opinion. He noted the plaintiff's apparent improvement following his surgery. Substantial evidence in the record supports the ALJ's finding that gaps in the plaintiff's treatment, as well as his engaging in activities such as mowing yards and retrieving firewood, reflect both the absence of severe limitations and the capacity to engage in light work. The ALJ also noted the plaintiff's repeated decision to not pursue additional evaluation of his condition or pain management. Moreover, the ALJ outlined his reasons for according little weight to the opinions of Drs. Oduntan and Moore regarding the plaintiff's disabled status. He noted their opinions, written as single isolated sentences on prescription pads, were inconsistent with their own notes reflecting that the plaintiff retained full range of motion and exhibited only mild tenderness and no acute distress. In addition, the ALJ properly relied on the

-13-

opinion of the state's expert physicians in concluding that the plaintiff retained sufficient RFC to engage in light work. *Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986) (holding that the opinions of a claimant's treating physician may only be overlooked if there is persuasive contradictory evidence, but the opinions of a non-examining physician can also be relied upon when they are consistent with the record). Although it does appear that any work activities in which the plaintiff engaged following the alleged onset of disability were limited by his back pain, substantial evidence in the record shows that significant numbers of jobs remained in the economy that the plaintiff did have the capacity to perform.

Substantial evidence also supports the ALJ's evaluation of the plaintiff's credibility regarding the severity of his pain. The ALJ emphasized Hardy's frequent activities, such as walking long distances and carrying firewood, as evidence that he is capable of performing relatively taxing tasks despite the severity of his pain. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding the ALJ's evaluation of the claimant's daily activities as evidence that she was not disabled). The ALJ expressed concern about the absence of physical or pathological manifestations that would explain the severity and duration of Hardy's pain.[3] Although he recognized that the plaintiff had been diagnosed with

---

[3] The regulations clearly provide that "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could

degenerative disc disease, the ALJ placed great weight on Dr. Jane's doubts about the plaintiff's medical and pain history.  In performing the laminectomy and discectomy, Dr. Jane informed the plaintiff that the procedure would address the pain and discomfort he experienced as a result of the bulging disc, but that it would not address any of the plaintiff's other complaints, of which there were apparently limited physical manifestations.  Finally, the ALJ was able to observe the plaintiff's demeanor during the hearing, at which Hardy also claimed to be in "severe" pain.  The ALJ, therefore, was presented with the opportunity to observe how pain that the plaintiff characterized as severe actually affected his ability to function during the hearing.

Although it does appear that the ALJ may have overstated the importance of some of the evidence in the record — for example, the extent of the plaintiff's work activities following the alleged onset date — I believe that the plaintiff's medical history and characterization of his daily routine and frequent activities provided substantial evidence to support the ALJ's determination of the plaintiff's RFC.  Moreover, it is clear that the ALJ considered the plaintiff's limitations carefully in outlining a RFC that provided for light work with some limitations.

---

reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled."  20 C.F.R. § 404.1529(a) (2012).

IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence.  The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits for the relevant time period.


DATED:   April 23, 2013

/s/  James P. Jones
United States District Judge